**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|                                         |   |                        |
|-----------------------------------------|---|------------------------|
| **PATRICK MCHUGH,**                     | * |                        |
|        **Plaintiff,**                   | * |                        |
| **v.**                                  | * | **Case No. BPG-09-1214** |
| **MAYOR AND CITY COUNCIL**              | * |                        |
| **OF BALTIMORE, et al.,**               | * |                        |
|        **Defendants.**                  | * |                        |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

The above-referenced employment discrimination case was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4. (ECF No. 11.) Currently pending are defendants' Motion for Summary Judgment and supporting memorandum (ECF Nos. 51 & 51-1), plaintiff's Cross-Motion for Summary Judgment and supporting memorandum (ECF Nos. 56 & 56-4), and the parties' responses to the opposing motions (ECF Nos. 57 & 58). For the reasons discussed herein, defendants' Motion (ECF No. 51) is GRANTED, and plaintiff's Cross-Motion (ECF No. 56) is DENIED.

I.    BACKGROUND

Plaintiff, a Caucasian male, was employed by the Baltimore City Department of Public Works from September, 2001 to April, 2008. (Am. Compl., ECF No. 22 ¶ 2; Apr. 15, 2008 Termination Letter, ECF No. 51 Ex. 2.) Plaintiff began his employment at Baltimore City's Back River Wastewater Sewage Treatment plant and was transferred to a position as a water operations technician at Baltimore City's Water Treatment Facility ("Facility") in July of 2005. (Am. Compl., ECF No. 22 ¶ 2; Charge of Discrimination, ECF No. 51 Ex. 3.) The Facility is

made up of three plants: Montebello I, Montebello II, and the Ashburton Filtration Plant. (Am. Compl., ECF No. 22 ¶ 2.) The parties do not dispute that plaintiff was a competent employee and that, prior to the March 4, 2008 events leading to his termination, plaintiff was not considered dangerous. (Defs.' Mem., ECF No. 51-1 at 2; Pl.'s Mem., ECF No. 56-4 at 2.)

According to plaintiff's Amended Complaint, plaintiff was physically assaulted and harassed by two African-American co-workers, Lionel Rice and Daniel Mims, on several occasions during the course of his employment. (ECF No. 22 ¶¶ 3, 14.) Plaintiff reported these incidents to his supervisors, defendants Angela Butler ("Butler") and Andre Moseley ("Moseley"), but they refused to "competently and properly investigate" plaintiff's complaints. (Id. ¶ 8.) Instead, Butler and Moseley, who are both African-American, "conspired to terminate the plaintiff" from his position by falsely accusing plaintiff of threatening physical violence against Rice and other employees.[1] (Id. ¶ 9.) After Butler and Moseley reported plaintiff's alleged threats to their superiors, defendant Mayor and City Council of Baltimore ("the City") terminated plaintiff for making "statements . . . which were inappropriate and a violation of the City's Violence in the Workplace Policy." (Id. ¶¶ 10-12.)

Following his termination, plaintiff filed the instant suit against the City, Butler, and Moseley (collectively "defendants") alleging that they discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 24 U.S.C. § 2000e, et. seq. ("Title VII"), 42 U.S.C. § 1981, and 42 U.S.C. § 1985. (Id. ¶¶ 25-43.) In addition, plaintiff's Complaint alleges that defendants' failure to terminate Rice prior to Rice's altercation with plaintiff constitutes negligence because defendants knew Rice had a history of violence toward

---

[1] Plaintiff claims that Moseley frequently referred to plaintiff as a "Mick," a derogatory term for a person of Irish descent. (McHugh Aff., ECF No. 56 Ex. 1 ¶ 49.)

other employees.  (Id. ¶¶ 44-54.)

Following the close of discovery, the parties cross-moved for summary judgment as to all four counts of plaintiff's Amended Complaint.  The relevant facts are set forth more fully below.

A.  The February 14, 2008 Altercation with Lionel Rice

On February 14, 2008, plaintiff was scheduled to work a four-hour night shift collecting water samples at the Ashburton Filtration Plant alongside Lionel Rice.  (McHugh Dep., ECF No. 51 Ex. 1, at 45-46, 50-51.)  When plaintiff arrived at the plant, Rice, who was working a full eight-hour shift that night, informed plaintiff that he did not intend to do any more work, as he "already did [his] four hours."  (Guerin Dep., ECF No. 51 Ex. 7, at 16-17.)  Plaintiff became upset by Rice's refusal to do any work and began "bugging" and "agitating" Rice.  (Id. at 17-18.)  Plaintiff claims that he informed his immediate supervisor, Butler, a Water Treatment Technician Supervisor, of Rice's refusal to collect the samples, and Butler responded that "[i]t doesn't matter who gets the samples as long as they get done."  (McHugh Dep., ECF No. 51 Ex. 1, at 64-66.)

Tensions escalated when plaintiff called Rice a "lazy bum," a "moron," and a "dumbass." (Id. at 67; Guerin Dep., ECF No. 51 Ex. 7, at 17.)  Following this exchange, Rice followed plaintiff into a hallway, where plaintiff claims Rice hit him in the face and pinned him against a wall.  (McHugh Dep., ECF No. 51 Ex. 1, at 68.)  Plaintiff called Butler to inform her that Rice had assaulted him.  (Butler Dep., ECF No. 51 Ex. 4, at 42.)  Butler drove to the Ashburton plant and interviewed plaintiff, Rice, and another employee who witnessed the altercation, William Guerin.  (Id. at 43-44.)  Guerin corroborated plaintiff's claim that Rice pinned him against a wall, but Butler determined that plaintiff's claim that Rice had struck him was not credible.  (Id.)

Butler's supervisor and Assistant Plant Manager, Moseley, arrived soon after and took

over the investigation. (Moseley Dep., ECF No. 51 Ex. 6, at 43.) At Moseley's direction, plaintiff, Rice, Guerin, and Butler prepared written statements. (Id. at 43-44.) On February 27, 2008, Moseley issued plaintiff and Rice written warnings—plaintiff for "inflammatory and derisive name calling" and Rice for "physically restraining Mr. McHugh"—and referred both men to the Employee Assistance Program ("EAP") for evaluations. (ECF No. 51 Exs. 13 & 14.)

Plaintiff claims that, approximately two weeks after the February 14, 2008 incident, Rice called plaintiff and threatened plaintiff and his family. (McHugh Aff., ECF No. 56 Ex. 1 ¶ 39.) Plaintiff contends that he reported these threats to Butler and Moseley, but nothing was done. (Id.) Plaintiff further asserts that Butler was aware of Rice's intimidating and threatening behavior towards other employees, including Addison Frett and Hilton Pipkin, prior to the February 14, 2008 incident, but took no disciplinary action. (Pl.'s Mem., ECF No. 56-4 at 10 (citing Butler Dep., Ex. 9, at 35-36).)

Plaintiff also alleges that he was attacked by another African-American co-worker, Daniel Mims, on December 1, 2007, and that Mims intentionally locked plaintiff out of the Facility "in the frigid cold" on January 4, 2008. (Am. Compl., ECF No. 22 ¶ 14.) Plaintiff reported both incidents, but no disciplinary action was taken. (Id.; Investigation Report Forms, ECF No. 56 Exs. 22 & 23.)

B. The March 4, 2008 Incident Leading to Plaintiff's Discharge

In the early hours of March 4, 2008, plaintiff encountered Butler in the control room at the Montebello I plant, where both were working that night. (Butler Dep., ECF No. 51 Ex. 4, at 53.) According to Butler, plaintiff was "just sitting there and he looked kind of upset." (Id.) When Butler asked plaintiff what was wrong, Butler claims that plaintiff made statements threatening physical violence against Rice and other employees. (Id. at 53-55.) Butler reported

plaintiff's alleged threats to Moseley, who directed her to fill out a written report.  (Id. at 56.)

Butler's March 4, 2008 Investigative Report described plaintiff's statements as follows:

> Patrick told me that he is fighting back.  It's called revenge.  He said that he has a lawyer.  He pulled up on the computer where he was acquitted on a handgun violation.  And O'Malley was his lawyer.  He knows people who will get the job done.  Kill Rice.  Kill everybody until they get to Rice.  These guys he had to talk to for 6 months about not bombing a police barracks.  He said that these guys lived in West Virginia.  One was in jail for murder and now he is out.  Ones name was Tiny and he did not know his last name. . . . He has an iPod with weapons from 15th Century to today.  He has a canon that he carries on the back of his pickup truck.  He has shown it to Ashburton maintenance crew.  He showed pictures of his swords.  He said that he has 41 to 43 of them.

(ECF No. 51 Ex. 18.)

Moseley promptly informed his supervisor, Michael Kohler, Water Systems Manager, of plaintiff's alleged threats, who, in turn, consulted with his supervisor, Ralph Cullison, Chief of Environmental Services for the Department of Public Works.  (Moseley Dep., ECF No. 51 Ex. 6 at 58-59.)  Later that day, Moseley issued plaintiff a memo, signed by Cullison, placing him on leave "pending an informal hearing regarding statements [plaintiff] made in violation of the Violence in the Workplace policy."  (ECF No. 51 Ex. 24.)  In a letter dated March 4, 2008, Kohler informed plaintiff that he had been recommended for termination and advised him that an informal hearing would follow.  (Id. Ex. 21.)

On March 26, 2008, an informal hearing was held. (Apr. 15, 2008 Letter from Bryan Samuels to Patrick McHugh, ECF No. 51 Ex. 2.)   Present at the hearing were plaintiff and his union representative, Gary Hines, Cullison, Kohler, and Regina Grande-Brown, Administrative Officer from the Bureau of Water and Wastewater, who handled personnel matters for the Facility.  (Kohler Dep., ECF No. 51 Ex. 20, at 20.)  Plaintiff submitted a statement at the hearing in which he denied making the statements reported by Butler on March 4, 2008.  (ECF No. 56 Ex. 16.)  Following the hearing, Cullison, in consultation with Grande-Brown, recommended

plaintiff's termination to his superior, Bryan Samuels, Acting Bureau Head of the Department of

Public Works. (Cullison Dep., ECF No. 51 Ex. 5, at 11-14, 38-39.) Samuels then submitted a

dismissal recommendation memorandum to David Scott, Acting Director of Public Works, on

April 9, 2008, who approved the recommendation on April 15, 2008. (ECF No. 51 Ex. 25.) On

April 15, 2008, Samuels issued plaintiff a letter notifying him of his discharge. (Id. Ex. 2.)

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] A

genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The only

facts that are properly considered "material" are those that might affect the outcome of the case

under the governing law. Id. The party moving for summary judgment has the burden of

demonstrating the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); Pulliam

Inv. Co. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987).

When considering a motion for summary judgment, the court views all facts and makes

all reasonable inferences in the light most favorable to the non-moving party. Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The non-moving party, however,

may not rest on its pleadings, but must show that specific, material facts exist to create a genuine,

triable issue. Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). On those issues

for which the non-moving party will have the burden of proof, it is his or her responsibility to

oppose the motion for summary judgment with affidavits or other admissible evidence specified

---

[2] Effective December 1, 2010, Federal Rule of Civil Procedure 56 was "revised to improve the procedures for presenting and deciding summary judgment motions" to make them "more consistent with those already used in many courts." Fed. R. Civ. P. 56 advisory committee's note. The summary judgment standard, however, "remains unchanged." Id.

in the rule.  Fed. R. Civ. P. 56(c); <u>Mitchell v. Data General Corp.</u>, 12 F.3d 1310, 1315-16 (4th

Cir. 1993).  If a party fails to make a showing sufficient to establish the existence of an essential

element on which that party will bear the burden of proof at trial, summary judgment is proper.

<u>Celotex</u>, 477 U.S. at 322-23.

Where, as here, the parties file cross motions for summary judgment, "[t]he court must

rule on each party's motion on an individual and separate basis, determining, in each case,

whether a judgment may be entered in accordance with the Rule 56 standard."  <u>Towne Mgmt.</u>

<u>Corp. v. Hartford Acc. and Indem. Co.</u>, 627 F. Supp. 170, 171 (D. Md. 1985) (citing 10A

Wright, Miller & Kane, <u>Federal Practice and Procedure</u> § 2720 (3d ed. 1998)).

III.    <u>DISCUSSION</u>

A.    <u>Title VII Claim</u>

Title VII makes it unlawful for an employer "to discharge . . . or otherwise to

discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's race."  42 U.S.C. § 20000e-2(a)(1).

Plaintiff alleges that the City's[3] "failure to discipline African American employees for attacking

him," while disciplining plaintiff for the February 14, 2008 and March 4, 2008 incidents,

constitutes racial discrimination, in violation of Title VII.   (Am. Compl., ECF No. 22 ¶¶ 31-32.)

A plaintiff may establish a Title VII claim either through direct proof of discrimination or

through circumstantial evidence, using the three-part burden-shifting approach articulated in

<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  Since plaintiff has produced no direct

proof of discrimination, his claims are subject to the <u>McDonnell Douglas</u> burden-shifting

---

[3] Plaintiff's Title VII claim is brought solely against the City, and not the individual
defendants.  The Fourth Circuit has held that individual supervisors cannot be liable under Title
VII.  <u>Lissau v. S. Food Svc., Inc.</u>, 159 F.3d 177, 180 (4th Cir. 1998).

scheme.  Id.  Under the burden-shifting approach, a plaintiff must first establish, by a preponderance of the evidence, a prima facie case of discrimination.  Halperin v. Abacus Tech. Corp., 128 F.3d 191, 196 (4th Cir. 1997), overruled on other grounds by Baird v. Rose, 192 F.3d 462 (4th Cir. 1999).  A prima facie case of Title VII discriminatory discipline requires proof of three elements:  (1) that the plaintiff is a member of a protected class; (2) that his or her misconduct was of comparable seriousness to the misconduct of employees outside the protected class; and (3) that the discipline imposed on the plaintiff was more severe than that imposed on the similarly situated employees.  Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993); Moore v. City of Charlotte, 754 F.2d 1100, 1105-06 (4th Cir. 1985) (citing Burdette v. FMC Corp., 566 F. Supp. 808, 815 (S.D.W. Va. 1983)).

Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant, who must come forward with a legitimate, nondiscriminatory explanation for the disparate disciplinary action.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000).  If such a reason is proffered, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the apparently valid reason was actually a pretext for illegal discrimination.  Id. at 143.

Defendants argue that plaintiff has not adduced sufficient facts to establish a claim under Title VII because:  (1) plaintiff cannot establish a prima facie case of discriminatory discipline, (2) the City had a legitimate, non-discriminatory reason for terminating plaintiff, and (3) plaintiff cannot prove that the City's reason for terminating plaintiff was a pretext for discrimination. (Defs.' Mem., ECF No. 51-1 at 15-28.)   Plaintiff argues that, viewing the facts in the light most favorable to the City, he is entitled to summary judgment on the issue of liability under Title VII or, alternatively, there are genuine issues of material fact, such that the City's motion should be

denied.[4]  (Pl.'s Mem., ECF No. 56-4 at 14-25, 32; Pl.'s Reply Mem., ECF No. 58 at 20-21.)

The City argues that plaintiff has not established the second or third prongs of a prima facie case of discriminatory discipline.[5]  First, the City argues that plaintiff cannot demonstrate that his misconduct was comparable in seriousness to the misconduct of employees outside of the protected class.  (Defs.' Mem., ECF No. 51-1 at 15-17.)  Specifically, the City argues that plaintiff's March 4, 2008 "terroristic-type threat" to "engage in a killing spree to seek revenge upon Mr. Rice," which plaintiff "had the means to carry out" with his "arsenal of various weapons," was more serious than the "scuffle" between plaintiff and Rice on February 14, 2008.[6] (Id. at 17.)  The City also argues plaintiff's threats were more serious than either of the incidents involving Mims.  (Defs.' Reply Mem., ECF No. 57 at 5.)  In response, plaintiff "denies making the statements attributed to him by defendant Butler."  (ECF No. 56-4 at 16.)  Alternatively, plaintiff argues that Rice's physical attack on plaintiff, which was corroborated by Guerin, was more serious than plaintiff's alleged March 4, 2008 statements, which were vague, spoken in the future tense, and did not "create[] any apprehension of imminent harm."  (Id.)  Moreover, plaintiff argues that, while he is a known Civil War and Irish history enthusiast and admits to frequently telling his co-workers about his collection of antique guns and knives, he has never

_____

[4] The court notes at the outset that plaintiff has not produced sufficient evidence to entitle him to judgment as a matter of law on any of his claims.  The court's analysis, therefore, focuses on whether there is sufficient evidence to generate a factual dispute as to any of plaintiff's claims, such that defendants' motion should be denied.

[5] The parties do not dispute that plaintiff, a Caucasian, has satisfied the first prong of the prima facie case, that he is a member of a protected class.  See McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273 (1976) (Title VII applies to any racial group, whether minority or majority).

[6] The City also argues that plaintiff's discriminatory discipline claim is further undermined by the fact an African American employee was terminated on October 29, 2008 for threatening behavior similar to plaintiff's.  (Defs.' Mem., ECF No. 51-1 at 17 n. 12 (citing Hooper Aff., Ex. 26).)

threatened anyone with a weapon and, as admitted by Butler, is prone to exaggeration. (Id. at 17 (citing Butler Dep., ECF No. 56 Ex. 9, at 30).)

In determining whether a plaintiff's misconduct is comparable in seriousness to that of employees outside the protected class, a court should consider "the gravity of the offenses on a relative scale," comparing "the harm caused or threatened to the victim or society, and the culpability of the offender." Moore v. City of Charlotte, 754 F.2d 1100, 1107 (4th Cir. 1985) (quoting Solem v. Helm, 463 U.S. 277 (1983)). Exact similarity between the compared offenses is not required. Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993) ("[T]he comparison will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances."). Viewing the facts and reasonable inferences in the light most favorable to plaintiff, a reasonable jury could find that the physical attacks on plaintiff by Rice and Mims were comparable in seriousness to plaintiff's verbal threats of violence against Rice and other employees, yet plaintiff was disciplined more harshly than Rice or Mims.

Plaintiff's prima facie case fails, however, because plaintiff is unable to establish that he is similarly situated to his comparators. As the City argues, "different decision-makers were involved with determining the appropriate discipline for the February 14, 2008 and the March 4, 2008 incidents," and thus, plaintiff and Rice are not similarly situated. (Defs.' Mem., ECF No. 51-1 at 18-19 (citing Forrest v. Transit Mgmt of Charlotte, Inc., 2007 WL 2348698, at *2 (4th Cir. Aug. 15, 2007) (affirming judgment as a matter of law on plaintiff's Title VII discriminatory discipline claim where employee outside protected class who engaged in comparable misconduct had a different supervisor).) Specifically, Moseley was the decisionmaker in issuing written warnings to plaintiff and Rice after the February 14, 2008 altercation. (Id. at 18.) In contrast,

Michael Kohler and Ralph Cullison (who are both Caucasian)[7] made the decision to recommend

plaintiff's termination following his alleged March 4, 2008 threats, which was then approved by

Bryan Samuels and ultimately, David Scott.  (<u>Id.</u> at 18-19.)  Applying the same logic, the City

argues that plaintiff cannot establish a <u>prima facie</u> case using Daniel Mims as a comparator

because Moseley was responsible for the disciplinary action following the December 1, 2007 and

January 4, 2008 incidents involving plaintiff and Mims.  (Defs.' Reply Mem., ECF No. 57 at 3-

4.)

       In his cross-motion, plaintiff asserts that even though Moseley and Butler did not play

formal decisionmaking roles in his termination, the City should be held liable because Moseley

and Butler had a "substantial influence" on the decision to terminate him, citing <u>Hill v. Lockheed

Martin Logistics Mgmt., Inc.</u>, 314 F.3d 657, 669-670 (4th Cir. 2003) (reversing district court's

grant of summary judgment for employer), <u>vacated</u>, 354 F.3d 277 (4th Cir. 2004) (en banc).

(ECF No. 56-4 at 20-25.)   In response, the City disputes that Moseley or Butler had a substantial

influence on the termination decision because Kohler and Cullison independently investigated

the March 4, 2008 incident.  (Defs.' Reply Mem., ECF No. 57 at 12-16.)  In reply, plaintiff

challenges the City's assertion that plaintiff and Rice/Mims were not similarly situated because

different decisionmakers were involved, arguing that Moseley and Butler deliberately chose not

to refer the Rice and Mims incidents to management, thereby excluding Kohler, Cullison,

Samuels, and Scott from any involvement in them.  (ECF No. 58 at 12.)  Plaintiff also argues that

there is no evidence that any meaningful investigation into the March 4, 2008 incident was

---

[7] Defendants note that the "fact that decision makers [are] of the same protected class suggests no discriminatory motivation."  (Defs.' Reply Mem., ECF No. 57 at 11 n. 10 (citing <u>Bryan v. Lucent Tech., Inc.</u>, 307 F. Supp. 2d 726, 739 n. 2 (D. Md. 2004) (internal citation omitted)).)

conducted by Kohler, Cullison, or Samuels.  (Id. at 12-16.)

The parties misstate the relevant standard for determining whether a subordinate employee's discriminatory animus can be imputed to an employer in a Title VII claim.  The Hill opinion cited by the plaintiff (and which defendants agree with as the correct representation of the law) was subsequently vacated in Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277 (4th Cir. 2004) (en banc), in which the court refined the standard for imputing a biased subordinate's discriminatory animus to the employer and affirmed the district court's grant of summary judgment for Lockheed Martin.  In that case, the Fourth Circuit held that evidence that the actual decisionmaker's influential subordinate had a discriminatory animus is not sufficient to establish the defendant's liability for employment discrimination.  Id. at 291.  Rather, the court stated:

> [T]o survive summary judgment, an aggrieved employee who rests a discrimination claim under Title VII . . . upon the discriminatory motivations of a subordinate employee must come forward with sufficient evidence that the subordinate employee possessed such actual authority as to be viewed as the one principally responsible for the decision or the actual decisionmaker for the employer.

Id.

The plaintiff in Hill was an aircraft mechanic who brought a Title VII claim against her employer, arguing that she was discharged because of her sex and age, based upon discriminatory remarks made by her safety inspector, Fultz, that she was a "useless old lady," a "troubled old lady," and a "damn woman."   Id. at 283.  The Fourth Circuit found that, although Fultz reported Hill for the violations of company policy that ultimately resulted in her termination, he was not the "actual decisionmaker" or "principally responsible" for the termination decision.  Id. at 296-97.   The court based this conclusion on its findings that Hill's supervisor, Dixon, had independently investigated her reported infractions, Hill was given the

chance to dispute the violations, and there were no allegations that Dixon or the other superiors involved in the final termination decision were motivated by discriminatory animus. Id. at 291-97.

Thus, even assuming as true plaintiff's claim that Moseley and Butler were racially biased against him, in order for the City to be held liable, plaintiff must show that Moseley or Butler possessed sufficient authority to be deemed the "actual decisionmakers" or "principally responsible" for the decision to terminate plaintiff. This is a very rigorous test,[8] and, for the reasons discussed below, the court concludes that it is one that plaintiff is unable to satisfy based on the facts presented this case.

The undisputed facts demonstrate that Kohler and Cullison were responsible for the decision to recommend plaintiff's termination, which was subsequently approved by Samuels, and ultimately, Scott. Kohler testified that he made the initial dismissal recommendation in his March 4, 2008 letter, based upon his perception as to the severity of plaintiff's threats, and after conferring with plaintiff's supervisors, examining the written statements, and reviewing plaintiff's personnel file. (Kohler Dep., ECF No. 51 Ex. 20, at 16 ("I was the one who recommended the dismissal."), 28-29.) Following the informal hearing, at which plaintiff was present and given an opportunity to explain his statements, Cullison, in consultation with Grande-Brown from HR, made the decision to advance the termination recommendation up the

---

[8] See Sawicki v. Morgan State Univ., 2005 WL 5351448, at *7 (D. Md. Aug. 2, 2005) ("This standard . . . presents a substantial obstacle to the Title VII plaintiff who, as here, alleges that she was terminated because of the discriminatory conduct of her immediate supervisors but struggles to show that the ultimate decisionmaker harbored the same animus."); see also Ricci v. DeStefano, 557 U.S. ---, 129 S. Ct. 2658, 2689 (2009) (referring to the Hill "actual decisionmaker" test as "[t]he least employee-friendly standard").

administrative chain.[9]  (Cullison Dep., ECF No. 51 Ex. 5, at 38-40.)  Cullison testified that he "felt it warranted going forward" based upon plaintiff's "statement to Angela Butler that he knew people that could carry out his desire for revenge and were capable of coming into Montebello and taking what action is necessary, including injuring other people, in order to get to Mr. Rice and to extract that revenge."  (Id.)

Moseley and Butler were several administrative levels removed from the final decision to terminate plaintiff.  Butler testified that she has no authority to discipline employees or determine who should be terminated.  (Butler Dep., ECF No. 51 Ex. 4, at 65.)  If an employee complains of an incidence of violence by another employee, Butler passes it on to her supervisors, Moseley or Anthony Anderson.  (Id. at 22-23.)  Similarly, Moseley testified that the ultimate decision as to whether an employee should be terminated "has to be made by Mr. Kohler or . . . Mr. Cullison" and "then it goes up beyond them to the bureau heads, who make the final decision of whether to terminate."  (Moseley Dep., ECF No. 51 Ex. 6, at 29.)  Moseley further testified that the decision to terminate plaintiff was "out of [his] hands" and "in other management's hands," and notably, that if it were his decision, he "would have sent [plaintiff] to EAP."  (Id. at 66.)

Plaintiff makes much of the fact that Moseley admitted that he determines "whether a disciplinary event moves up the ladder" and that he initiated the process that resulted in plaintiff's termination.  (Pl.'s Reply Mem., ECF No. 58 at 3-4.)   The fact that Moseley referred the March 4, 2008 incident to plaintiff's superiors for further disciplinary action is not sufficient, however, to create a factual dispute as to whether he was "principally responsible" for plaintiff's

---

[9] Cullison testified that he does not have authority to terminate employees, even following an informal hearing, "because it must be done at a higher administrative level."  (Id. at 14, 30.)

termination.  See Hill, 354 F.3d at 297 ("By bringing Hill's shortcomings to light, Fultz merely

initiated the decisionmaking process that led to the final two reprimands issued by Dixon and the

termination decision. . . . The mere fact that Fultz's opinion was solicited by Griffin during the

course of the decisionmaking process is insufficient to change the undisputed fact that Griffin

reached an independent, non-biased decision to terminate Hill.").  Moreover, even assuming the

truth of plaintiff's assertion that Moseley and Butler had a "material influence on the decision to

suspend and terminate the plaintiff" (ECF No. 58 at 2-3), an employer is not liable for a

subordinate's discriminatory animus "simply because they have influence or even substantial

influence in effecting a challenged decision."  Id. at 291. (emphasis added).

In sum, viewing the facts in the light most favorable to plaintiff, the evidence is

insufficient to create a genuine dispute of material fact as to whether Moseley and Butler were

responsible for the decision to terminate plaintiff.  Since different decisionmakers were

responsible for the disciplinary actions stemming from the March 4, 2008 incident and the earlier

incidents involving Rice and Mims, plaintiff cannot establish that he and his comparators are

similarly situated, and his prima facie case must fail.  Accordingly, the court must grant

summary judgment in the City's favor.  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett,

477 U.S. 317, 322-23 (1986) (holding that summary judgment is appropriate where a party fails

to make a showing sufficient to establish the existence of an essential element on which that

party will bear the burden of proof at trial).

The court must also note, however, that even if plaintiff had established a prima facie

case of disparate discipline, the City has satisfied its burden to come forward with a legitimate,

non-discriminatory reason for the plaintiff's termination.  Reeves v. Sanderson Plumbing Prods.,

Inc., 530 U.S. 133, 142 (2000) ("This burden is one of production, not persuasion; it 'can involve

no credibility assessment.'") (citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 (1993)).

The City points to Kohler's testimony at his deposition that he made the decision to recommend

termination based on his judgment as to the severity of plaintiff's threats of violence, as well as

the warning plaintiff received following his altercation with Rice three weeks earlier. (Defs.'

Mem., ECF No. 51-1 at 19-20 (citing Ex. 20 at 16, 29-30, 41, 58 & 30).) The City also cites

Cullison's deposition testimony, in which he stated that he believed plaintiff's statements

"warranted going forward" with termination. (<u>Id.</u> (citing Ex. 5, at 38).) In sum, the City has

submitted admissible deposition testimony revealing Kohler and Cullison's belief that plaintiff's

termination was justified based on the severity of his March 4, 2008 threats of violence. The

City does not have the burden at this stage to "persuade the court that it was actually motivated

by the proffered reasons." <u>Texas Dept. of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981).

The burden of persuading the fact finder that the City was motivated by discriminatory animus

"remains at all times with the plaintiff." <u>Id.</u> at 253.

 The court further concludes that plaintiff has not produced sufficient evidence to meet his

burden of proving that the City's asserted reason for terminating him was a pretext for

discrimination. <u>See</u> <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 143, 148 (2000)

("A plaintiff's <u>prima facie</u> case, combined with sufficient evidence to find that the employer's

asserted justification is false, may permit the trier of fact to conclude that the employer

unlawfully discriminated."). Even if Moseley and Butler had discriminatory motives in pursuing

disciplinary action against plaintiff, because Moseley and Butler were not responsible for the

decision to terminate him, any discriminatory animus on their part is not sufficient to impose

liability on the City. <u>Hill v. Lockheed Martin Logistics Mgmt., Inc.</u>, 354 F.3d 277, 291 (4th Cir.

2004) (en banc); <u>see also</u> <u>Klump v. Mayor of Balt.</u>, 2010 WL 2384274, at *4 (D. Md. June 8,

2010) ("The relevant actor for purposes of determining discriminatory intent is the decision maker.") (citing <u>Tinsley v. First Union Nat'l Bank</u>, 155 F.3d 435, 444 (4th Cir. 1998), <u>abrogated on other grounds by</u> <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002)). Moreover, plaintiff has offered no evidence to suggest that those responsible for the decision to discharge him, Kohler, Cullison, Samuels, and Scott, did not honestly believe that plaintiff made the statements threatening to kill Rice and that they were serious enough to warrant termination. <u>See</u> <u>Holland v. Wash. Homes, Inc.</u>, 487 F.3d 208, 217-18 (4th Cir. 2007) (affirming summary judgment for employer where there was no evidence company president and ultimate decisionmaker did not believe plaintiff had threatened his supervisor when president made decision to terminate him); <u>Merritt v. Old Dominion Freight Line, Inc.</u>, 601 F.3d 289, 300 (4th Cir. 2010) ("We must of course be cautious about attributing to any ultimate decision maker . . . the most unfortunate expressions and beliefs of those around him and those who worked in his employ. . . . It is regrettable that any distasteful comments will arise in the workplace, but that cannot mean that the actual decision maker is impugned thereby. It is the decision maker's intent that remains crucial.") (citing <u>Hill</u>, 354 F.3d at 291)). As plaintiff has not demonstrated a nexus between the alleged discriminatory motives of Moseley and Butler and the ultimate decision to terminate him, plaintiff cannot establish that the City's asserted reason for dismissing him was pretextual.[10]

---

[10] The court also notes that the cases cited by defendants support the conclusion that the City's alleged misapplication of the Workplace Violence Policy (which defendants dispute) does not give rise to an inference of pretext. <u>See</u> <u>Dugan v. Albemarle Cnty. Sch. Bd.</u>, 293 F.3d 716, 722 (4th Cir. 2002) ("Even if there is evidence that the school board erroneously or even purposely misapplied the RIF policy, it is not proof of unlawful discrimination."); <u>DAG Petroleum Suppliers, LLC v. BP P.L.C.</u>, 2008 WL 193193, at *6 (4th Cir. Jan. 23, 2008) ("[I]n this context, '[p]retext is a lie' or cover-up, not merely a mistake. <u>Price v. Thompson</u>, 380 F.3d 209, 214 n. 1 (4th Cir. 2004) (internal quotations omitted). Therefore, evidence that BP 'erroneously or even purposely misapplied [its own] policy,' will not suffice to overcome

In short, plaintiff has not satisfied his burden of proving, by a preponderance of the evidence, a prima facie case of discriminatory discipline. In addition, the City has presented a legitimate, non-discriminatory reason for plaintiff's termination—the severity of plaintiff's threats of violence towards other City employees—which plaintiff has failed to establish as pretextual. Accordingly, the City's motion for summary judgment is granted as to plaintiff's Title VII claim, and plaintiff's cross-motion is denied.

B.     § 1981 Claim

In his Amended Complaint, plaintiff claims that defendants are also liable for race discrimination under 42 U.S.C. §1981.[11] (ECF No. 22 ¶ 41-43.) Defendants argue, and the court concludes, that the City is entitled to summary judgment on plaintiff's § 1981 claim for the same reasons discussed in part III.A, supra, because Title VII and § 1981 are analyzed under the same legal framework.[12] (Defs.' Mem., ECF No. 51-1 at 14 n. 10 (citing Patterson v. McLean Credit

_____

summary judgment." See Dugan, 293 F.3d at 722.)

[11] 42 U.S.C. § 1981 prohibits racial discrimination in the making and enforcement of contracts. This provision has been interpreted to provide a federal remedy for racial discrimination in employment. See Spriggs v. Diamond Auto Glass, 165 F.3d 1015, 1018 (4th Cir. 1999).

[12] Even if plaintiff's Title VII claim were to survive summary judgment, defendants assert that plaintiff's § 1981 claim against the City fails for the additional reason that plaintiff has offered no evidence that his termination was carried out pursuant to an official City policy. (Defs.' Mem., ECF No. 51-1 at 28-29 (citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 710-11 (1989) (for a municipality to be held liable for its employees' actions, those actions must represent official municipal policy); Thornton v. Balt. City Bd. of Sch. Com'rs, 2009 WL 3767090, at *8 (D. Md. Nov. 9, 2009); Talley v. Farrell, 156 F. Supp. 2d 534, 540 (D. Md. 2001).) Plaintiff responds that under Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986), a municipality may be held liable for a single act by an individual with final decisionmaking authority. (Pl.'s Mem., ECF No. 56-4 at 27-28.) Plaintiff asserts that "Moseley is the final decisionmaker in this case because his recommendations were followed by his supervisors, without investigation." (Id. at 28.) In response, defendants argue that plaintiff cannot establish municipal liability under § 1981 because there is no evidence that Moseley had final policymaking authority. (Defs.' Reply Mem., ECF No. 57 at 19-20 (citing Pembaur, 475

Union, 491 U.S. 164, 186 (1989), superseded on other grounds by statute, Civil Rights Act of

1991, Pub. L. No. 102-166, 105 Stat. 1071; Causey v. Balog, 162 F.3d 795, 804 (4th Cir. 1998)

(because plaintiff failed to establish defendants violated his rights under Title VII, his claim

under § 1981 also fails).)   Accordingly, defendants' motion for summary judgment on plaintiff's

§1981 claim is granted as to the City, and plaintiff's cross-motion is denied.

Defendants next argue that the individual defendants, Moseley and Butler, are entitled to

summary judgment on plaintiff's § 1981 claim.  (Defs.' Reply Mem., ECF No. 57 at 21-23.)

Individual defendants may only be held liable under § 1981 for purposeful and intentional

discrimination.  Carson v. Giant Food, Inc., 187 F. Supp. 2d 462, 483 (D. Md. 2002).

Defendants argue that Moseley and Butler cannot be held liable under § 1981 because they did

---

U.S. at 481; Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro, 64 F.3d
962, 964-65 (4th Cir. 1995); Lytle v. Doyle, 326 F.3d 463, 472 (4th Cir. 2003).)

There is no evidence upon which a fact finder could reasonably conclude that plaintiff's
termination was carried out pursuant to an official City-wide policy of race discrimination or that
Moseley, an Assistant Plant Manager, had authority to establish employment policy for the City.
Even assuming that Moseley was responsible for plaintiff's termination, the cases cited by
defendants offer support for the conclusion that authority over personnel matters does not equate
to "final policymaking authority" for purposes of establishing municipal liability.  See Crowley
v. Prince George's Cnty., 890 F.2d 683, 686-87 (4th Cir. 1989) (county police chief authorized
to make final personal decision did not have final policymaking authority so as to impute
liability to the county for racial discrimination).  Accordingly, the court concludes, alternatively,
that plaintiff's claim against the City under § 1981 fails for the additional reason that the
termination decision was not carried out pursuant to an official City policy.

This conclusion is not undermined by plaintiff's claim that he sought leave of court to
take more than ten depositions as to Bryan Samuels for the purpose of establishing municipal
liability, which request was opposed by defendants and denied by this court on March 3, 2010.
(Pl.'s Mem., ECF No. 51-1 at 26; ECF No. 36.)  If Samuels' testimony was critical to
establishing an element of one of plaintiff's claims, plaintiff could have used one of his original
ten depositions to depose him.  Further, as defendants point out, it was David Scott, not Samuels,
who made the ultimate decision to terminate plaintiff.  (Defs.' Reply Mem., ECF No. 57 at 21 n.
15.)  Finally, there is simply no support for plaintiff's assertion that defendants' opposition to
plaintiff's discovery motion somehow operates as a waiver of defendants' right to challenge
plaintiff's claim of municipal liability under § 1981.

not "authorize, direct, or participate in" the decision to discharge plaintiff. (ECF No. 57 at 22 (citing <u>Atkins v. Winchester Homes</u>, 2007 WL 269083, at *9 (D. Md. Jan. 17, 2007).) In response, plaintiff argues that he has set forth sufficient facts to establish a claim against Moseley and Butler under § 1981. (Pl.'s Reply Mem., ECF No. 58 at 17-18.) Plaintiff points specifically to Butler and Moseley's failure to take disciplinary action against African American employees, Moseley's purported misrepresentation of plaintiff's March 4, 2008 statements to management, and Butler's alleged changing of her story regarding plaintiff's March 4, 2008 statements at Moseley's direction. (<u>Id.</u>)

The court concludes that plaintiff has not produced sufficient evidence to create a dispute of material fact as to whether Moseley and Butler "authorize[d], direct[ed], or participate[d] in" the decision to terminate plaintiff. <u>Atkins</u>, 2007 WL 269083, at *9; <u>see also</u> <u>Adams v. Giant Food, Inc.</u>, 225 F. Supp. 2d 600 (2002) (granting summary judgment for individual defendants where there was no evidence that they participated in decision to terminate plaintiff). For reasons already discussed in detail in part III.A, <u>supra</u>, the evidence demonstrates that the termination decision was recommended by Kohler and Cullison and approved by Samuels and Scott. Accordingly, defendants' motion for summary judgment on plaintiff's § 1981 claim is also granted as to the individual defendants, Moseley and Butler, and plaintiff's cross-motion is denied.

C.      § 1985 Claim

Plaintiff alleges that defendants "conspired to deprive the plaintiff of the equal enjoyment of rights secured by the law to all," in violation of 42 U.S.C. § 1985.[13] (Am. Compl., ECF No.

---

[13] 42 U.S.C. § 1985 provides, in pertinent part:

22 ¶ 34.)  A cause of action for civil conspiracy under § 1985 requires proof of the following elements:  "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law by all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy."  <u>Simmons v. Poe</u>, 47 F.3d 1370, 1376-77 (4th Cir. 1995) (internal citations omitted).

As defendants' argue, plaintiff "cannot establish the purported underlying discrimination that serves as the basis for his conspiracy claim" for reasons previously discussed in part III.B, <u>supra</u>, and, accordingly, plaintiff's § 1985 claim must fail.[14]  (Defs.' Mem., ECF No. 51-1 at 30-31 (citing <u>Roberson v. Bowie State Univ.</u>, 899 F. Supp. 235, 238 (D. Md. 1995) ("Since he has not alleged specific facts to support intentional discrimination [under § 1981], a fortiori Plaintiff has not alleged facts that would support a finding of concerted effort by Defendants to deprive him of his rights [in violation of § 1985(3)].");   <u>Hoffman v. Balt. Police Dept.</u>, 379 F. Supp. 2d 778, 796 (D. Md. 2005) (noting that because plaintiff failed to state claims for violations of his First Amendment rights, those claims cannot serve as the basis for plaintiff's § 1985(3) conspiracy claim).

---

If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

[14] As defendants point out, "only Plaintiff's Section 1981 claim can serve as a substantive predicate for his Section 1985(3) claim."  (Defs.' Mem., ECF No. 51-1 at 31 n. 17 (citing <u>Great Am. Fed. Savings & Loan Assoc. v. Novotny</u>, 442 U.S. 366, 378 (1979) ("We conclude that § 1985(3) may not be invoked to redress violations of Title VII.").)

Plaintiff's § 1985 conspiracy claim also fails because plaintiff has not produced sufficient evidence to demonstrate that Moseley and Butler participated in a joint plan of action to deny plaintiff his constitutional rights. Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995) ("[T]he law is well settled that to prove a section 1985 'conspiracy,' a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights.") (internal citations omitted). In his cross-motion, plaintiff argues, without further factual support, that he "has established that defendant Butler and Moseley have jointly embarked upon a course of action to remove the plaintiff from employment with the City." (ECF No. 56-4 at 29.) Defendants respond that plaintiff's conclusory assertions are insufficient to establish a claim of conspiracy under §1985. (ECF No. 57 at 23 (citing Simmons, 47 F.3d at 1376-77.) In reply, plaintiff asserts that an agreement between Moseley and Butler can be inferred from their cooperation with each other. (ECF No. 58 at 19 (citing Waller v. Butkovich, 584 F. Supp. 909, 931, 933 (M.D.N.C. 1984) (complaint sufficiently pled cause of action for conspiracy under § 1985).)

Plaintiff does not identify any facts in the record to support such a circumstantial finding. Earlier in his memorandum, plaintiff claims that Moseley directed Butler to submit a written report following the March 4, 2008 incident and "even told [Butler] some of the language to put in the report." (Pl.'s Reply Mem., ECF No. 58 at 3.) A review of Butler's testimony reveals that Moseley merely instructed Butler to include in the report the fact that management had responded to plaintiff's threats by placing him on leave pending an informal conference. (Butler Dep., ECF No. 58 Ex. 9, at 77-78.) Plaintiff also claims that Moseley influenced Butler's testimony regarding the March 4, 2008 incident because Butler changed her position as to whether she felt threatened by plaintiff's alleged threats after speaking with Moseley. (ECF No.

58 at 10-11 (citing Moseley Dep., Ex. 1, at 65-66).)  Viewing the evidence in the light most

favorable to plaintiff, these interactions between Moseley and Butler could not reasonably

support a finding that they embarked on a joint plan of action to violate plaintiff's constitutional

rights.  Indeed, the Fourth Circuit has recognized that the standard for establishing a conspiracy

under § 1985 is "relatively stringent." Simmons, 47 F.3d at 1377 ("This Court, under that

standard, has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a

section 1985 conspiracy, such that the claim can withstand a summary judgment motion.").

Accordingly, defendants' motion for summary judgment is granted as to plaintiff's § 1985 claim,

and plaintiff's cross-motion is denied.[15]

---

[15] Defendants also argue that plaintiff's § 1985 conspiracy claim fails under the "intracorporate conspiracy doctrine," which extends to government entities and provides that employees acting in the normal course of their duties are not legally capable of conspiring with one another or with the entity of which they are employees.  (Defs.' Mem., ECF No. 51-1, at 31-32 (citing Roberson v. Bowie State Univ., 899 F. Supp. 235, 238 (D. Md. 1995); Buschi v. Kirven, 775 F.2d 1240, 1252-53 (4th Cir. 1985).)  In response, plaintiff argues that Moseley and Butler's conduct was not authorized by the City, and therefore falls within the exception to the intracorporate conspiracy doctrine.  (Pl.s' Reply Mem., ECF No. 58 at 19 (citing Balt.-Wash. Tel. Co. v. The Hot Leads Co., LLC, 584 F. Supp. 2d 736, 744 (D. Md. 2008) (discussing exceptions to the doctrine).)  Defendants argue that there are no facts to support a finding that Moseley or Butler "acted outside the bounds of their authority, or that their actions were dominated by personal motives."  (ECF No. 51-1 at 32 (citing Buschi, 775 F.2d at 1252 (recognizing an exception to the intracorporate conspiracy doctrine under these circumstances).)

Butler and Moseley were acting within the scope of their authority as supervisors when they referred plaintiff for discipline following his March 4, 2008 statements threatening violence in the workplace.  In addition, plaintiff has not made a sufficient showing that Moseley and Butler's conduct was so motivated by discriminatory animus as to fall within the exception to the intracorporate conspiracy doctrine.  Moreover, courts in other circuits have taken a restrictive view of the type of discriminatory conduct that must be alleged in order for an exception to the doctrine to apply.  See Hartman v. Bd. of Trustees of Cmty. Coll. Dist. No. 508, 4 F.3d 465, 470 (7th Cir.1993) (alleged agreement between two superiors to restrict scope of student recruitment program was not extensive or pervasive enough to fall within exception to intracorporate conspiracy doctrine).  Accordingly, the court holds, alternatively, that plaintiff's conspiracy claim also fails under the intracorporate conspiracy doctrine.

D.    <u>Negligent Retention</u>

In his Amended Complaint, plaintiff alleges that Moseley and Butler are liable for negligence for failing to remove or effectively discipline Rice for his violent attacks on plaintiff and other employees.  (ECF No. 22 ¶¶ 44-54.)  Defendants argue that both the City and individual defendants are entitled to summary judgment on plaintiff's negligent retention claim.  (Defs.' Mem, ECF No. 51-1 at 33-41.)  In his reply memorandum, plaintiff concedes that the City is entitled to governmental immunity as to plaintiff's negligent retention claim.[16]  (Pl.'s Mem., ECF No. 56-4, at 32).  Accordingly, summary judgment is granted in favor of the City as to plaintiff's negligent retention claim.  The court will address the parties' arguments as to the individual defendants below.

Defendants argue that the individual defendants are entitled to immunity under Maryland's Local Government Tort Claims Act ("LGTCA")[17] because plaintiff's alleged injuries are compensable under the Maryland Workers' Compensation Act ("MWCA").[18]  (Defs.' Mem.,

---

[16] Plaintiff states in his memorandum that he "does not dispute that the Local Government Tort Claims Act does not waive [the City's] immunity for Count Four."  (ECF No. 56-4 at 32.)  As defendants point out, the LGTCA waives the City's sovereign immunity only to the extent of its obligation to indemnify employees for torts committed in the scope of their employment.  (Defs.' Mem., ECF No. 51-1 at 40 (citing <u>Livesay v. Balt. Cnty.</u>, 384 Md. 1, 20, 862 A.2d 33, 44 (2004).)

[17] The LGTCA provides, in pertinent part:  "If the injury sustained is compensable under the Maryland Workers' Compensation Act, an employee may not sue a fellow employee for tortious acts or omissions committed within the scope of employment."  Md. Code. Ann. Courts and Judicial Proceedings, § 5-302(c).

[18] Md. Code Ann., Labor & Employment § 9-101 <u>et seq.</u>  The MWCA "provide[s] employees with compensation for loss of earning capacity, regardless of fault, resulting from accidental injury . . . occurring in the course of employment."  <u>DeBusk v. Johns Hopkins Hosp.</u>, 342 Md. 432, 437, 677 A.2d 73, 75 (1996).  Compensation under the MWCA "substitutes for an employee's common law right to bring a fault-based tort suit against an employer for damages resulting from the employee's injury or disablement on the job."  <u>Id.</u> at 438, 75.  <u>See also</u> <u>Demby v. Preston Trucking Co.</u>, 961 F. Supp. 873, 881 (D. Md. 1997) (exclusivity provisions of MWCA barred former employee's negligent supervision and retention claims against former employer).

ECF No. 51-1 at 35-36.)  Alternatively, defendants argue that Moseley and Butler have common

law immunity because they were acting as supervisors performing nondelegable duties, citing

Athas v. Hill, 300 Md. 133, 476 A.2d 710 (1984) and Suburban Hosp., Inc. v. Kirson, 362 Md.

140, 763 A.2d 185 (2000).  (Id. at 36-38.)  Plaintiff responds that "the MWCA does not preempt

a claim for negligent retention," citing Gasper v. Ruffin Hotel Corp. of Md., Inc., 183 Md. App.

211, 960 A.2d 1228 (2008).  (Pl.'s Mem., ECF No. 56-4 at 29.)  Plaintiff further asserts that

Gasper undermines defendants' claim that Moseley and Butler have common law immunity.  (Id.

at 29-30.)

        The court holds that Moseley and Butler are entitled to immunity under the LGTCA as to

plaintiff's negligence retention claim.  Plaintiff's injuries are compensable under the MWCA,

which provides a remedy for "accidental personal injury sustained by the covered employee,"

regardless of fault.  Md. Code. Ann., Labor and Employment § 9-501(b).  The Act defines

"accidental injury" to include "an injury caused by a willful or negligent act of a third person

directed against a covered employee in the course of the employment of the covered employee."

§ 9-101(b).  Where an employee's injuries are compensable under the MWCA, the LGTCA

provides that "an employee may not sue a fellow employee for tortious acts or omissions

committed within the scope of employment."  Md. Code Ann., Courts and Judicial Proceedings §

5-302(c).

        Alternatively, the court finds that Moseley and Butler are entitled to common law

immunity as to plaintiff's negligent retention claim.  Athas v. Hill, 300 Md. 133, 476 A.2d 710

(1984), cited by defendants, is analogous to the case at bar.  In Athas, a restaurant employee who

was attacked by a violent coworker brought a suit against three supervisors, alleging that they

knew or should have known about the coworker's violent tendencies, yet failed to warn him or

protect him from the danger. The Maryland Court of Appeals held that a "supervisory coemployee who performs a nondelegable duty of the employer," such as the duty to provide a safe place to work, "does not thereby assume a personal duty toward his fellow employees." Id. at 148, 718. A supervisory coemployee may only be liable if he or she "commits an affirmative, direct act of negligence toward an employee, and therefore negligently breaches a personal duty of care." Id. at 149, 718.

Plaintiff's negligent retention claim is premised on his allegations that Moseley and Butler were aware of Rice's violent propensities and yet failed to remove or effectively discipline him, which plaintiff alleges constituted "a wanton and reckless disregard for the safety of the other employees." (Am. Compl., ECF No. 22 ¶ 51.) Since Moseley and Butler were acting as supervisors when they allegedly negligently discharged the City's nondelegable duty to provide plaintiff a safe place to work, they are entitled to the benefit of the City's immunity under Athas.

The Gasper case does not undermine this conclusion, as plaintiff argues. In Gasper, the plaintiff sued her employer for negligently hiring and retaining the supervisor who fired her after she reported that she was sexually harassed by another employee. The Court of Special Appeals declined to find that the plaintiff's claim was barred by the exclusivity provision of the MWCA, as the employer had submitted no authority that supported such a conclusion, concluding instead that plaintiff's claim was governed by general tort principles. 183 Md. App. at 232, 960 A.2d at 1240. Gasper did not directly address the issue of supervisor liability for failure to provide a safe place to work. Moreover, defendant correctly points out that "contrary to plaintiff's assertion, the immunity for supervisory coemployees discussed in Athas and Suburban Hospital does not derive solely from the Workers Compensation scheme, but existed at common law." (Defs.'

Reply Mem., ECF No. 57 at 24.)

For the foregoing reasons, summary judgment is granted in favor of the individual defendants, Moseley and Butler, as to plaintiff's negligent retention claim.

      E.      <u>Punitive Damages</u>

Defendants argue in their motion for summary judgment, and plaintiff concedes in his reply, that plaintiff's is not entitled to punitive damages against the City. (<u>See</u> Defs.' Mem., ECF No. 51-1 at 41; Pl.'s Mem., ECF No. 56-4 at 32.) Accordingly, defendants' motion for summary judgment is granted as to the issue of punitive damages.

IV.      <u>CONCLUSION</u>

For the reasons discussed above, defendants' motion for summary judgment (ECF No. 51) is GRANTED, and plaintiff's cross-motion for summary judgment (ECF No. 56) is DENIED. A separate Order shall issue.

March 24, 2011                                     _____/s/_____
                                                Beth P. Gesner
                                                United States Magistrate Judge